**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0829-16T3

L.S.,

    Plaintiff-Respondent,

v.

F.H.,

    Defendant-Appellant.

_____

Submitted December 11, 2017 — Decided  June 13, 2018

Before Judges Sabatino, Ostrer and Whipple.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Hudson County,
Docket No. FD-09-1326-14.

Toni Ann Russo, attorney for appellant.

Bonilla Law Offices, LLC, attorneys for
respondent (Meghan K. Gulczynski, of counsel
and on the brief).

PER CURIAM

    Defendant F.H. appeals from May 6, 2016 and October 11, 2016

orders of the Family Part related to custody, parenting time, and

support for her child with plaintiff L.S. For the reasons enunciated by Family Part Judge Mirtha Ospina, we affirm.

F.H. and L.S. had a son, who was born in November 2013. In January 2014, L.S., a resident of Connecticut, filed a pro se complaint seeking to establish paternity and requesting joint legal custody of the child. F.H. cross-moved for child support, sole custody, "reasonable" visitation, and an order preventing L.S. from taking the child out of New Jersey because he was a "careless driver." In March 2014, the court ordered a paternity test and held the other issues in abeyance until the results were confirmed.

In April 2014, L.S. filed an amended complaint, seeking parenting time and requesting that his last name be added to the child's.

After oral arguments in May 2014, and based on the results of the paternity test, the court ordered L.S.'s name be added to the child's birth certificate as his father, and the child's surname be a combination of both parents' names. It also ordered joint legal custody, with F.H. having residential custody, parenting time for L.S. every Saturday from 10:00 a.m. to 5:00 p.m., and shared holidays. Child support was set at $29 a week, plus fifteen percent of medical bills over $250, for which F.H. needed to submit documentation prior to reimbursement.

2

In November 2014, L.S. moved to enforce parenting time and sought to change the location for pick-ups and drop-offs to a police station. L.S. asserted that after his first visit at F.H.'s house, she accused him of domestic abuse and sexual assault, and because he could not make bail on the sexual assault charge, he was incarcerated for nearly six months. The domestic violence complaint was dismissed after trial, and the grand jury, in the criminal case, entered a no-bill. When L.S. was released, he sought to reestablish his parenting time, but he received no response from F.H., which caused him to miss scheduled visits and holiday time.

The court heard oral argument in March 2015 and ordered three weeks of supervised visitation given L.S.'s lengthy absence from the young child's life due to incarceration. The other issues were held in abeyance.

In April 2015, the parties returned to court, where the judge continued the supervised visitation because L.S. interacted with the child in a loving and positive manner. The judge ordered visitation to continue every Saturday from 10:00 a.m. to 5:00 p.m. and ordered the parties to attend mediation.

After mediation, the parties agreed parenting time would gradually increase to overnight time and child support was set at

$75 per week, among other things. On May 6, 2015, the court incorporated the agreement into an order.

In March 2016, F.H. filed another domestic violence complaint against L.S., and a temporary restraining order was entered. However, in April after a trial, the court vacated the temporary restraining order and dismissed the complaint.

On April 4, 2016, L.S. moved to enforce and expand parenting time. He argued the agreement provided he could seek to increase parenting time; however, when he sought to have the child overnight on alternating weekends, F.H. initially agreed, but she stopped all parenting time and communication when he asked her to reduce the arrangement to writing. L.S. requested make-up parenting time and a set schedule for holidays. He also sought to enforce the prior name-change order, claiming that F.H. refused to use the child's legal name. He further requested counsel fees for the enforcement action.

In response, on April 8, 2016, F.H. moved for "full custody", modification of parenting time, pick-ups and drop-offs to be at the West District Police Station in New Jersey, and to enforce and increase L.S.'s obligation to pay a portion of the child's medical expenses. She claimed L.S. had been negligent while the child was in his care because the child returned with bruises, he failed to properly dress the child, which contributed to the child's asthma

A-0829-16T3

condition, and he brought the child to the Bronx Center where he had gotten hurt and sick. She contended they had agreed exchanges would occur at her home due to an undisclosed "medical condition," but he had reneged. She requested the exchanges take place in New Jersey because she was unable to drive for long periods because of medical reasons, her work hours had increased, and she was caring for an older child.

On April 25, 2016, F.H. filed another motion, seeking an increase in child support and a cessation of overnight visits until the child could speak due to the stress the visits allegedly caused him. She claimed L.S. refused to follow the visitation orders and did not show up, canceled, and did not bring the child back to her.

L.S. argued there was no change of circumstances justifying modification of custody and denied harming the child. He objected to being tasked with all of the driving for parenting time, and was willing to pay his share of medical expenses, but he claimed F.H. never provided proof of the expenses.

On May 6, 2016, the Family Part judge heard oral arguments and sworn testimony by the parties. The parties had resumed their romantic relationship in November 2015 and L.S.'s attorney represented when they broke up in January 2016, F.H. started making parenting time difficult for L.S. L.S. claimed F.H. had called

5

the Division of Child Protection and Permanency (the Division) numerous times about L.S., and each time, the Division determined the allegations were unfounded. F.H. admitted she involved the Division once.

The court refused to change the custody arrangement, finding F.H. had not shown a substantial change of circumstances and noting that changing custody was a "last remedy" if other options were unsuccessful. The judge ordered sixteen make-up parenting days for L.S., stating she did not believe the child was "conveniently ill for [sixteen] times" as F.H. had alleged. The court denied F.H.'s request to have all exchanges occur in New Jersey but allowed her to send someone in her stead if she were unable to drive. The judge ordered F.H. to pay $2,687.50 towards L.S.'s counsel fees, finding the enforcement action was necessitated by her refusal to allow parenting time and she had the ability to pay counsel fees. The judge signed an order the same day.[1]

On May 31, 2016, F.H. moved for reconsideration. In addition, she made new claims for temporary sole legal and physical custody and supervised parenting time pending L.S.'s completion of a psychological evaluation, anger management class, and parenting skills course. She again requested that all pick-ups and drop-

---

[1] A second order was signed to correct a typographical error on May 10, 2016.

offs be in New Jersey. She also asked the court to hold L.S. in contempt for failing to return the child on a previous date, and for counsel fees. F.H. certified that her "debilitating back condition" prevented her from driving more than forty-five minutes and the trips to Connecticut interfered with her other son's activities. She alleged L.S.'s "violent, aggressive, and irresponsible" behavior was a threat to the child as the child often returned with "bumps, bruises, cuts, scrapes, and scratches." She also asked for an increase in child support, claiming L.S. was making more money, her income had stayed the same, and she now had to travel to Connecticut.

L.S. denied his income had increased, stating instead he was deprived of income while incarcerated as a result of F.H.'s unfounded allegations. He argued that she failed to show a change in circumstances, either to change custody or increase child support. He requested additional counsel fees and sought a transfer of custody to him given F.H.'s constant interference with his visitation rights.

On October 11, 2016, the Family Part judge denied the motion for reconsideration, finding F.H. raised no issues the court previously failed to address and no substantial change in circumstances warranting a change of custody or an increase in child support. Instead, the judge found F.H. in violation of the

7                                                      A-0829-16T3

previous order to pay L.S.'s counsel fees and the order requiring the use of the father's last name, and was not submitting medical bills to L.S. prior to requesting reimbursement. The judge found that F.H. "want[ed] to relitigate this over, and over, and over again, wasting not only clearly [L.S.'s] time and making him have to seek counsel and for counsel fees, but wasting the Court's time on the same issues that have been litigated ad nauseam." The judge denied F.H.'s motion for reconsideration with prejudice, telling her she could not "make another application" for the same relief. She awarded counsel fees of $3,675 to L.S., because the reconsideration motion was "a waste of time, was in fact, made in bad faith, and more importantly, . . . I'm awarding [counsel fees] under the enforcement application." The judge told F.H. if she continued to disobey court orders and interfere with L.S.'s custody, the judge would consider transferring custody to him. An order was signed the same day.

On October 20, 2016, F.H.'s emergent application to stay the October 11, 2016 order was denied. The next day, F.H.'s request to file an emergent motion in the Appellate Division was also denied.

This appeal followed. F.H. appeals from the May 6, 2016 order denying F.H.'s application for change in custody and enforcing L.S.'s parenting time, and from the October 11, 2016

8

order denying reconsideration. In her appeal, she raises ten points, which essentially amount to four assertions: The Family Part judge erred by (1) denying her request for sole custody and to modify parenting time without a plenary hearing; (2) increasing L.S.'s parenting time without a showing of changed circumstances; (3) awarding counsel fees to L.S.; and (4) denying her motion for reconsideration. We will address these issues in turn. All other arguments are either moot or without merit.

I.

F.H. argues the Family Part judge erred in denying her applications for sole custody and to decrease L.S.'s parenting time, as she showed a prima facie case of changed circumstances sufficient to warrant a plenary hearing. She claims changed circumstances were shown cumulatively because L.S. "failed to appreciate [the child's] medical issues and dress [him] appropriately to avoid asthma attacks," he exposed the child to "an environment where he has gotten sick," the child suffered bruises while in L.S.'s care, and he was "inconsistent" with parenting time.

Due to "the special jurisdiction and expertise of the family court," we defer to factual determinations made by the trial court as long as they are "supported by adequate, substantial, and credible evidence in the record." Milne v. Goldenberg, 428 N.J.

Super. 184, 197 (App. Div. 2012) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). We will not disturb the fact-findings of the trial judge unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interest of justice." Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 151 (App. Div. 2003) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "[D]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare, 154 N.J. at 412). Absent compelling circumstances, the Appellate Division may not substitute its judgment for that of the trial court, which has become familiar with the case. Schwartz v. Schwartz, 68 N.J. Super. 223, 232 (App. Div. 1961).

"In custody cases, it is well settled that the court's primary consideration is the best interests of the children." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (citation omitted). A party seeking to modify custody or parenting time must demonstrate changed circumstances that affect the welfare of the child. Ibid.; Lepis v. Lepis, 83 N.J. 139, 157 (1980); Abouzahr, 361 N.J. Super. at 152. Once the moving party makes a prima facie showing of changed circumstances, only then is the moving party

entitled to "a plenary hearing as to disputed material facts regarding the child's best interests, and whether those best interests are served by modification of the existing custody order." Faucett v. Vasquez, 411 N.J. Super. 108, 111 (App. Div. 2009).

The judge found F.H. did not show a substantial change of circumstances sufficient to change custody, and there was no "reason to deprive the father of any more . . . parenting time." Our review of the record demonstrates the evidence supports the judge's decision.

F.H. claimed the child was "bruised" when he returned from seeing his father; she reported her allegations to the Division, which found they had no merit. Similarly, although F.H. claimed L.S. put the child in situations where he got sick, these were simply general claims that L.S. failed to provide appropriate care. Her allegations were supported only by her own certifications and testimony, and given her repeated false accusations against L.S. and attempts to deprive him of parenting time, the court did not find her to be credible.

We do not find the court's determination was in error. Given that F.H. did not meet the changed circumstances threshold, the judge was not obliged to hold a best-interests plenary hearing on either motion.

Next, F.H. argues the judge erred by substantially increasing L.S.'s parenting time and ordering her to drive to Connecticut because prior to a change in parenting time, L.S. was required to show changed circumstances and the court was then obliged to hold a plenary hearing to determine if a change was in the best interests of the child. We disagree.

The May 2015 consent agreement, regarding custody and parenting time, stated the parties "agreed to an incremental parenting time arrangement which will gradually increase contact" between L.S. and the child "as well as gradually incorporating overnight [p]arenting [t]ime between the child and his [f]ather in the [f]ather's house." Starting in August 2015 and continuing through October 2015, L.S. was to have one overnight a month in addition to his weekly visit, and F.H. agreed to transport the child to and from Connecticut on the overnight weekend visit. For November and December 2015 and January 2016, L.S. was to have two single overnights on alternating weekends. This schedule was "the minimum amount of parenting time"; the parents could, by mutual consent, increase or modify the agreement as needed.

Beginning in February 2016, the agreement stipulated the parents would work out a parenting time schedule "to include more single overnights, alternating (two night) weekend overnights

and/or mid-week parenting time" either through consent or mediation. In L.S.'s April 2016 application, he claimed F.H. refused to reduce a schedule to writing. In accordance with the consent agreement, the judge ordered L.S.'s parenting time to increase to every other weekend, Friday to Sunday.

F.H. acknowledges the parenting consent agreement, yet argues L.S. did not show the existing parenting time agreement entered on May 1, 2015 was no longer in the best interest of the child. However, because the parties were bound by the consent agreement, which contemplated an increase in parenting time, L.S. was not required to show changed circumstances. He only sought court intervention to enforce the agreement when F.H. refused to formalize an increased parenting schedule, as contemplated by the agreement.

## III.

Next, F.H. argues the Family Part abused its discretion by ordering her to pay L.S.'s counsel fees first on May 6, 2016, and again on October 11, 2016, because she did not consider certain factors under Rule 5:3-5(c). "An award of counsel fees is only disturbed upon a clear abuse of discretion," and will be disturbed only on the rarest of occasions. J.E.V. v. K.V., 426 N.J. Super. 475, 492 (App. Div. 2012) (quoting City of Englewood v. Exxon Mobil Corp., 406 N.J. Super. 110, 123 (App. Div. 2009)). Thus,

we defer to the court's determinations unless they plainly lack evidentiary support, are contrary to the record, or are based on a misapplication or disregard of the law. Tannen v. Tannen, 416 N.J. Super. 248, 280-81 (App. Div. 2010).

Rule 4:42-9(a)(1) states "[n]o fee for legal services shall be allowed . . . except [i]n a family action . . . pursuant to Rule 5:3-5(c)." Rule 5:3-5(c) says that in determining the amount of the fee award, the court should consider:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

In granting L.S.'s counsel fee request, the judge considered the certification of his attorney, including her qualifications. She noted that F.H. had the ability to pay, and that L.S.'s motion was to enforce missed parenting time, and for that reason, she imposed counsel fees. The judge considered the actions brought by both parties, concluding the only part of F.H.'s motion that was for enforcement regarded L.S.'s alleged non-payment of medical

14

bills, and found F.H. had not properly presented the bills for payment. The results obtained were not favorable to F.H. and were favorable to L.S. Moreover, L.S.'s motion to enforce his parenting time rights was necessitated by F.H.'s lack of cooperation.

The judge also noted, based on documented paystubs, F.H. earned $148,000 per year, and at least $102,000 in 2015. The child support worksheet, which the court prepared in setting L.S.'s child support obligation in May 2014, shows F.H. had a yearly gross income of $111,644, while L.S. had a yearly gross income of $16,016. Where one party has substantial income and the other does not, "[t]hat disparity alone would suggest some entitlement . . . to a fee allowance." Lavene v. Lavene, 148 N.J. Super. 267, 277 (App. Div. 1977).

While F.H. asserts the judge erred in not considering fees previously awarded, there were none. She also complains the judge did not consider fees previously paid. F.H. represented herself at this hearing, and although she claims she owed her former counsel money, she provides no evidence supporting this in the record. As such, any error in not considering these factors was harmless.

On October 11, 2016, the judge again granted counsel fees to L.S. under the enforcement application. F.H. now argues that the judge did not consider the relevant factors under Rule 5:3-5 and

Rule 4:42-9.

The judge concluded under Rule 5:3-7(a), the court can impose economic sanctions when a party has violated an order regarding custody or parenting time. Additionally, she found the fees sought were reasonable, and F.H. acted in bad faith and wasted the court's time by not only seeking reconsideration, but adding new and meritless requests for relief.

The judge noted the motion for reconsideration was a mere re-litigation of issues previously been fully addressed. Moreover, F.H. made no payment towards the counsel fees initially ordered in May 2016, and failed to abide by multiple orders with respect to the child's name. Considering the record as a whole, we do not find this award of fees was an abuse of discretion.

IV.

Lastly, F.H. asserts the judge erred in denying her motion for reconsideration. The decision on whether to deny a motion for reconsideration rests squarely in the discretion of the trial court. Marinelli v. Mitts & Merrill, 303 N.J. Super. 61, 77 (App. Div. 1997) (citation omitted). A motion for reconsideration should be granted only under the narrow circumstances "in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the

16

significance of probative, competent evidence." <u>Fusco v. Bd. of Educ. of City of Newark</u>, 349 N.J. Super. 455, 462 (App. Div. 2002) (citations omitted).

First, F.H. argues the judge did not consider the significance of her medical issues and how they would impact the parenting time arrangements with L.S. However, during the May 6, 2016 hearing, in response to F.H.'s assertion that because of documented back problems, she could not make the drive to and from Connecticut as she was ordered, the judge stated, "[y]ou can make arrangements to have your child picked up if you so choose." As such, the judge clearly considered the impact that a back condition would have on the parenting time arrangement.

Next, F.H. contends the trial judge did not properly consider the changed circumstances demonstrated by L.S.'s inability to provide adequate care to the child. However, in support of her application for sole custody, F.H. only repeated her earlier claims that the child was not safe in L.S.'s care, and points to nothing the judge explicitly overlooked in making her decision. A motion seeking reconsideration of a prior order is governed by <u>Rule</u> 4:49-2, which requires the movant to "state with specificity the basis on which [the motion] is made, including a statement of the matters or controlling decision which counsel believes the court has overlooked or as to which it has erred . . . ."

F.H. also contends the judge did not consider changes in L.S.'s income when denying her motion for reconsideration regarding child support arrangements. The judge denied an increase to L.S.'s child support obligation, finding no changed circumstances. We cannot say this determination was in error.

As a preliminary matter, school expenses, food, and clothing are included in the Child Support Guidelines, and under Rule 5:6B, child support orders are subject to an automatic cost-of-living adjustment every two years, from the last date the support order was entered or modified. See Burns v. Edwards, 367 N.J. Super. 29, 34 (App. Div. 2004). Furthermore, under the May 2014 order, medical expenses were an issue separate from child support, and even as such, F.H. provided no new information supporting an increase in L.S.'s obligation towards these expenses.

F.H. also asserts it was an error for the trial court to not consider her unsupported assertions that L.S. was underreporting his income, and such assertions warranted a plenary hearing. When applying for a modification of child support, the moving party "shall append copies of the movant's current case information statement and that movant's case information statement previously executed or filed in connection with the order, judgment or agreement sought to be modified." R. 5:5-4(a). "When the record presented to the court in support of a motion is deficient on its

face to satisfy such requirements, oral argument does not afford litigants an opportunity to cure such evidentiary deficiencies." Palombi v. Palombi, 414 N.J. Super. 274, 286 (App. Div. 2010). F.H. did not comply with this requirement, and thus, it was within the trial court's discretion to deny her request. See Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 351 (App. Div. 2009) (no further inquiry was necessary where there was no proof that defendant was concealing his income, "nor proof that his lifestyle was so disparate compared to his reported income").

F.H.'s motion to reconsider the May 6, 2016 award of counsel fees puts forth no new arguments or evidence in which she contends the trial court failed to consider.

Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion . . . ." Palombi, 414 N.J. Super. at 288. "[T]he magnitude of the error cited must be a game-changer for reconsideration to be appropriate." Id. at 289. "Said another way, a litigant must initially demonstrate that the Court acted in an arbitrary, capricious, or unreasonable manner, before the Court should engage in the actual reconsideration process." Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)) (emphasis added by Palombi court).

F.H. has not demonstrated the court acted in an arbitrary,

capricious, or unreasonable manner in denying her motion for reconsideration, and we cannot say the judge erred.

All additional arguments introduced by defendants are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION