966 A.2d 1082 (2009)
406 N.J. Super. 110
CITY OF ENGLEWOOD, Plaintiff-Respondent,
v.
As to Count One EXXON MOBILE CORPORATION, Saudi Basic Industries Corporation, As to Count Two Sun Refining & Marketing Company, New Way Associates, a General Partnership, Barry Dorn of New York, Inc., a New York Corporation, Barry Dorn, Inc., State of New Jersey, Division of Taxation, As to Count Three FBB Englewood, LLC, Defendant-Respondent,
Starbucks Corporation, Defendant-Respondent,
Bank of America, successor in interest to Fleet Bank as successor in interest to Summit Bank, Defendant-Appellant, and
State of New Jersey, Defendant-Respondent.
No. A-2490-07T2
Superior Court of New Jersey, Appellate Division.
Submitted December 10, 2008.
Decided February 10, 2009.
*1084 Sodini & Spina, LLC, Iselin, for appellant (Patrick J. Spina, of counsel and on the brief).
Duane Morris, LLP, Philadelphia, PA, for respondent FBB Englewood (George J. Kroculick, of counsel; Mr. Kroculick and Michael J. McCalley, on the brief).
Ferrara, Turitz, Harraka & Goldberg, Hackensack, for respondent City of Englewood (William F. Rupp, on the statement in lieu of brief).
Before Judges PARRILLO, LIHOTZ and MESSANO.
The opinion of the court was delivered by
PARRILLO, J.A.D.
In this condemnation action, defendant Bank of America (BOA) appeals from orders of the Law Division setting the rate of interest BOA is entitled to receive in satisfaction of its mortgage at less than the contractual rate, and awarding BOA counsel fees less than the full amount incurred. For reasons that follow, we affirm as to the former and reverse and remand as to the latter.
The facts are relatively straightforward. FBB Englewood, LLC (FBB) owned a parcel of land at 80 East State Highway 4 in Englewood, which is the subject matter of this appeal. BOA held a mortgage on the property with an interest rate of 7.5%. Pertinent to this appeal, the mortgage, dated June 25, 1999, provided:
(i) Condemnation. [FBB Englewood, LCC] hereby assigns to the Bank the proceeds of any award ... in connection with any condemnation or other taking of the Property or any part thereof under the power of eminent domain.... The Bank shall be entitled to payment of all expenses incurred by it in connection with any such judgment or award, including reasonable costs and attorneys' fees. After deducting expenses, the Bank may, in its absolute discretion, use all of any part of such sums received to reduce any amounts due under this Mortgage and/or the Note or may release any or all of such sum to the Mortgagor.
On March 28 and 29, 2005, plaintiff City of Englewood (City or plaintiff) filed a verified complaint and order to show cause seeking to acquire and condemn this property along with two other adjacent parcels.[1] FBB filed a notice of appearance and BOA, as mortgagee, filed an answer, separate defenses, cross-claim and counter-claim, asserting its interest in the condemnation proceeds and seeking an order compelling the City to "immediately deposit the sum of $1,550,000.00 ... the estimated value of the Premises as asserted by Plaintiff," and permitting BOA to withdraw "all such sums necessary to fully discharge the Bank's Mortgage." Following a hearing on the return date, the court denied BOA's requests, declaring that the City was duly authorized to exercise its power of eminent domain, and appointed Commissioners to appraise the property *1085 and fix the condemnation proceeds to be paid by August 23, 2005.[2]
When the Commissioners failed to file a report by the extended deadline, FBB moved, with notice to BOA, to compel the City to either file a declaration of taking and deposit just compensation with the court, or abandon the action. On January 23, 2006, the court granted FBB's motion and ordered the City to file a declaration of taking and deposit compensation into court by March 7, 2006.
In compliance therewith, on February 1, 2006, the City, pursuant to N.J.S.A. 20:3-18, filed a declaration of taking, and thereafter, on March 2, 2006, deposited $1,550,000 the estimated just compensation for FBB's propertywith the New Jersey Superior Court Trust Funds Unit.[3] One month later, on April 7, 2006, FBB moved to withdraw the deposited funds from the Trust Funds Unit, and to direct that a portion of the funds be paid to BOA to satisfy the outstanding balance on its mortgage. On April 20, 2006, BOA cross-moved for withdrawal, asserting its interest in the condemnation proceeds and requesting that it be paid the outstanding principal amount due on the mortgage, including accrued interest under the contract rate, and attorneys' fees. In response, FBB objected to both BOA's request for interest on the outstanding mortgage obligation at a rate greater than the current New Jersey Superior Court Trust Funds rate and its request for attorneys' fees. The City, however, objected to withdrawal by both parties due to concerns over possible environmental contamination on the property, and therefore requested that "the motions [for withdrawal] be adjourned for one cycle pending receipt of [environmental cleanup] cost estimates." Heeding the City's request, on May 16, 2006, the court denied both FBB's and BOA's requests for withdrawal, ordering that "remediation costs [first] be calculated before release of funds."[4]
Apparently, the environmental issue was resolved and the City no longer sought to have any estimated remediation costs held in trust. Consequently, on June 20, 2006, FBB once again moved for withdrawal and reiterated its position that although BOA should be paid an amount equal to the outstanding principal amount due on the mortgage, it was not entitled to interest on the mortgage "at a rate greater than the current New Jersey Superior Court Trust Funds rate." FBB also restated its objection to BOA's request for attorneys' fees, even though contractually based. BOA cross-moved for withdrawal, countering that FBB was attempting to "`short' BOA on the amount due for principal and interest on the BOA note/Mortgage" and "refus[ing] to pay BOA for attorneys fees and costs." In this regard, BOA certified that the outstanding balance on the mortgage as of July 13, 2006, including interest, was $711,905.57, and that it had incurred $8,213.69 in costs and attorneys' fees.
Following argument, the court found that BOA, in addition to the outstanding *1086 principal, was only entitled to receive the 7.5% contract interest rate up to April 24, 2006the date the court determined to be a reasonable period after the funds were deposited and BOA was able to apply for their withdrawalbut that thereafter, BOA was limited to the 4% interest rate set by the Trust Funds Unit. Thus, by order of September 18, 2006, the court, citing Rule 4:42-1, awarded BOA $720,146.26, plus any interest accruing after April 24, 2006 at the Trust Funds Unit rate. The court also held that BOA was entitled to reasonable attorneys' fees and costs, subject to a detailed breakdown and submission of a certification of services.
Both FBB and BOA moved for reconsideration. FBB argued that the order for withdrawal only provided for payment to BOA and also failed to account for FBB's overpayments to BOA from March to October 2006, when it continued to make its monthly mortgage payments of principal and interest under the mortgage terms. FBB further argued that BOA's attorneys' fees were unreasonably high. On the other hand, BOA argued that at the very least it was entitled to the mortgage interest rate up to September 18, 2006, the date of the court's order for withdrawal. BOA asserted it was owed $714,625.58, inclusive of principal, interest at the note rate, and attorneys' fees and costs of $9,036.48, which by November 17, 2006 had actually risen to $10,112.
In its revised order for withdrawal of December 19, 2006, the court directed the Trust Funds Unit to pay BOA $721,717.01, an amount reflecting the principal due on the mortgage and interest owed under the mortgage rate up to April 24, 2006, plus whatever amount of interest accrued after April 24, 2006 at the Trust Fund rate, and $5,000 in attorneys fees and costs. The order also directed BOA to reimburse FBB $55,642.48 for payments made by FBB from March to October 2006. On January 5, 2007, FBB submitted the revised order to the Trust Funds Unit, and on January 30, 2007, BOA was paid $746,497.47.[5]
On appeal, BOA, relying on our decision in City of Orange Twp. v. Empire Mortgage Servs., 341 N.J.Super. 216, 775 A.2d 174 (App.Div.2001) (Empire Mortgage), argues that as a matter of law, a mortgagee is entitled to interest at the rate stated in the mortgage note for a reasonable period of time after the condemnation proceeds are actually made available for withdrawal. BOA also argues that the award of counsel fees was unreasonably low and unsupported by any findings. We proceed to address these issues in the order raised.

(I)
As a general proposition, "when mortgaged land is the subject of the condemnation, all mortgage holders must be joined as defendants." Empire Mortgage, supra, 341 N.J.Super. at 221, 775 A.2d 174 (citing Roger A. Cunningham & Saul Tischler, 29 New Jersey Practice: Law of Mortgages § 165 at 760 (1975); R. 4:73-2(a)). A total taking under eminent domain changes the interests of the parties to the mortgage. See N.J.S.A. 20:3-19. Ergo,
the condemnation award is a substitute for the land when all or part of the mortgaged land is taken for public use. Thus the lien of the mortgage attaches to the condemnation award. If the entire property subject to the mortgage is condemned, the mortgagee is entitled to the entire award, or so much of it as *1087 necessary to satisfy the mortgage debt, even if the debt has not matured.
[Empire Mortgage, supra, 341 N.J.Super. at 221, 775 A.2d 174 (quoting Cunningham and Tischler, supra, § 165 at 761).]
When a municipality files a declaration of taking and simultaneously deposits just compensation into court pursuant to N.J.S.A. 20:3-18, the property, which represents the security for the mortgage, is no longer owned by the mortgagor, Empire Mortgage, 341 N.J.Super. at 227, 775 A.2d 174, because title vests in the condemning authority. N.J.S.A. 20:3-19. Consequently, the mortgagee no longer has a security interest in the property, hence the logic and protection behind the terms of the mortgage, which gives the mortgagee an interest in the condemnation proceeds after a taking under eminent domain. Empire Mortgage, 341 N.J.Super. at 227, 775 A.2d 174. In other words,
[a]s a result of this action by the State[,] the mortgagor's fee interest in the premises and the mortgagee's lien thereon were destroyed, and by operation of law both were transmuted to a present right to the funds deposited by the State with the clerk of the court.
[Jala Corp. v. Berkeley Sav. & Loan Ass'n, 104 N.J.Super. 394, 401, 250 A.2d 150 (App.Div.1969).]
Equally clear, interest runs on the award "from the date of the commencement of the action until the date of payment of compensation[.]" Casino Reinvestment Dev. Auth. v. Hauck, 162 N.J. 576, 578, 745 A.2d 1163 (2000); see also N.J.S.A. 20:3-31. The question raised in Empire Mortgage, and at the crux of this appeal, is at what point does the mortgagee receive the interest rate earned on the condemnation proceeds deposited in court rather than the contractual mortgage interest rate. Empire Mortgage answered the question as follows: a mortgagee is not entitled to collect the contractual rate of interest on the principal amount of the mortgage debt for property that is totally taken in a summary condemnation proceeding after it was mortgaged beyond a 45-day period for the mortgagee to apply for withdrawal of the estimated just compensation deposited into court by the condemnor, where (a) the deposited funds were sufficient to pay the outstanding principal balance of the mortgage debt, (b) the mortgage assigned to the mortgagee a condemnation award for a total taking and provided that such award would be applied to the mortgage debt "whether or not then due," and (c) there was no impediment to the mortgagee applying for the deposited funds. 341 N.J.Super. at 226-27, 775 A.2d 174. Noteworthy on this score is the fact that the Empire Mortgage court granted IMC a 45-day grace period because it was joined as a party defendant after the deposit was made and IMC was therefore not aware of the deposit until its joinder. Id. at 228, 775 A.2d 174.
Save for that feature, the facts of Empire Mortgage are similar to those here. The City of Orange condemned property owned by Okafor, the mortgagor, and deposited just compensation into court on October 7, 1998. Id. at 219, 775 A.2d 174. The City amended its condemnation complaint on November 6, 1998 to join IMC Mortgage Company, who held a mortgage on the property, as an additional defendant. Id. at 220, 775 A.2d 174. IMC, however, did not move for an order seeking payment of funds from the condemnation proceeds on deposit with the court until January 19, 2000. Ibid. IMC argued that Okafor was obligated under the mortgage note to make payments at the stated interest rate of 13.5% after the condemnation proceeds were deposited into court rather than the 5.5% rate of interest *1088 earned on the funds while on court deposit. Id. at 219, 775 A.2d 174. The Law Division agreed, ordering Okafor to pay IMC mortgage payments at the contract rate. Ibid. On appeal, we reversed and enunciated the aforecited rule, finding that without imposing a reasonable cut-off time, a lender could simply "sit back" and ignore funds it has a right to withdraw, all the while expecting the borrower to pay higher interest rates, late charges, and penalties. Id. at 226, 775 A.2d 174. In other words, we found it patently unfair for the borrower to pay the cost of the lender's inaction, deliberate or not. Ibid.
Of course, this result comported not only with notions of fairness, but as well with the law of eminent domain[6] and the terms of the very contract at issue, which in relevant part are identical to the mortgage here.[7] To reiterate, once a declaration of taking is filed and just compensation deposited into court, the mortgagee simultaneously assumes a right to those proceeds by operation of the mortgage, thereby extinguishing the obligations of the parties to the mortgage and leaving only the administrative task of allocating money. Ibid. And as to the further question of which party must bear the difference in interest rates, we determined, consistent with both law and the contract in question, that the mortgagor is relieved from his obligation to make payment after the condemnation award is paid into court and the funds are available for withdrawal by the mortgagee. Id. at 225, 775 A.2d 174.
BOA nevertheless equates "availability" of funds with their actual withdrawal from court. But nothing in Empire Mortgage suggests such a generous construction. Empire Mortgage did not rule that the contract rate of interest runs until payment is actually made. On the contrary, when addressing the notion of "availability" of funds, we explicitly stated that "there was no impediment to [the mortgagee] applying for withdraw[al,]" id. at 228, 775 A.2d 174 (emphasis added), obviously referring to the triggering point after which the contract rate of interest terminates and the court rate applies. In fact, in fairness to the mortgagee, as noted, we even allowed the mortgagee a reasonable period after notification of deposit to prepare the application for withdrawal of the funds on deposit and to obtain a decision thereon, suggesting a grace period of 45 days to be an adequate measure of the time to accomplish this. Ibid.
Here, BOA was served with the City's verified complaint on May 16, 2005. It knew full well of the condemnation action. Further, BOA's name and address appear on the City's service list in connection with its March 2, 2006 deposit. Even though BOA claims not to have been notified of the deposit, it was on constructive notice with the entry of the court's January 23, 2006 order to compel, directing the City to make deposit by March 7, 2006. At the very latest, BOA received actual *1089 notice of the deposit on April 7, 2006, when it was served with FBB's motion for withdrawal. Thus, as of April 7, 2006, no impediment existed for BOA's application for withdrawal. In fact, BOA itself applied for withdrawal on April 20, 2006, four days before the date the trial court terminated interest at the mortgage rate. BOA, therefore, was not prejudiced by any claimed lack of notice. Contrary to BOA's position, there is nothing arbitrary about the cut-off date of April 24, 2006, the trial court having considered that such a date, pursuant to Empire Mortgage, reflected a reasonable time from the date of the City's deposit in which BOA had an opportunity to file a motion to withdraw. Reviewed in that light, whether BOA actually received notice of the deposit is beside the point because it nonetheless moved for withdrawal within that reasonable timeframe.
To be sure, BOA's motion to withdraw was initially denied due to the City's unresolved environmental remediation concerns. But, contrary to BOA's argument, this does not necessarily mean that the funds were not "available." In the first place, it is inconsequent that the motion was denied after title had already vested in the City and the obligations of the mortgagor under the mortgage had already been extinguished. Nonetheless, the delay occasioned by the court's denial was not without impact on both FBB and BOA. Yet no sound reason exists for doubly burdening FBB, who remained obligated to continue paying interest, by requiring that interest be paid at the higher contract rate to the singular benefit of BOA. After all, the Trust Funds rate of interest is the same rate that FBB, as property owner, receives on its share of the proceeds. Moreover, FBB should not be made to suffer the additional costs of the higher interest rate where the delay was justified, as acknowledged by BOA itself in its July 21, 2006 cross motion, and as it turns out, attributable to no fault of FBB. Thus, we conclude that the funds were "available," as contemplated by Empire Mortgage, once the deposit was made and no impediment existed for BOA to apply for withdrawal of the funds on deposit.
We, therefore, find that BOA was awarded the proper rates of interest that it was entitled to receive. BOA received interest from the start of the action to the date it collected the condemnation proceeds, N.J.S.A. 20:3-31, and because April 24, 2006 is a reasonable cut-off date in which to terminate the mortgage rate and begin the Trust Funds rate, see Empire Mortgage, supra, 341 N.J.Super. at 225, 775 A.2d 174, the trial court did not err.

(II)
The mortgage at issue provides that "[t]he Bank shall be entitled to payment of all expenses incurred by it in connection with any such [condemnation] judgment or award, including reasonable costs and attorneys' fees." Here, BOA contends that, aside from granting a counsel fee that was unreasonably low, the court failed to state its reasons for the $5000 fee award or analyze the relevant factors, rendering its decision arbitrary. We agree.
An award of counsel fees is only disturbed upon a clear abuse of discretion. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444, 771 A.2d 1194 (2001) (citing Rendine v. Pantzer, 141 N.J. 292, 317, 661 A.2d 1202 (1995)). New Jersey has a strong policy disfavoring shifting of attorneys' fees. McGuire v. City of Jersey City, 125 N.J. 310, 326, 593 A.2d 309 (1991). Courts have adhered to the so-called "American Rule," which generally requires each party to pay its own attorneys' fees. Rendine, supra, 141 N.J. at 322, 661 A.2d 1202.
*1090 Certain exceptions are recognized in Rule 4:42-9. Kellam Assocs. v. Angel Projects, LLC, 357 N.J.Super. 132, 138, 814 A.2d 642 (App.Div.2003); R. 4:42-9(a)(1)-(8). "While a contractually-based claim, such as that asserted here, does not fall within any of the designated exceptions, [Rule 4:42-9] does not preclude a party from agreeing by contract to pay attorneys' fees." Kellam Assocs., supra, 357 N.J.Super. at 138, 814 A.2d 642. That exception to the general rule has been incorporated into Rule 4:42-9. N. Bergen Rex Transp. v. Trailer Leasing Co., 158 N.J. 561, 570, 730 A.2d 843 (1999).
The method of calculating attorneys' fees under a fee-shifting statute pursuant to Rule 4:42-9(a)(8) has been prescribed by Rendine, supra, and Furst v. Einstein Moomjy, 182 N.J. 1, 860 A.2d 435 (2004). See Rendine, supra, 141 N.J. at 316, 661 A.2d 1202 (plaintiff sought reasonable attorneys' fees under N.J.S.A. 10:5-27.1 in connection with her action under Law Against Discrimination, N.J.S.A. 10:5-1 to -42); Furst, supra, 182 N.J. at 21, 860 A.2d 435 (plaintiff sought reasonable attorneys' fees under N.J.S.A. 56:8-19 in connection with his action under Consumer Fraud Act, N.J.S.A. 56:8-1 to -20). Indeed, cases following Furst and Rendine have involved fee-shifting statutes. See, e.g., R.M. v. Supreme Court of New Jersey, 190 N.J. 1, 9-13, 918 A.2d 7 (2007) (authorizing award of counsel fees under Civil Rights Act); Twp. of West Orange v. 769 Assocs., LLC, 397 N.J.Super. 244, 255-56, 936 A.2d 1023 (App.Div.2007) (affirming Law Division's award of counsel fees under N.J.S.A. 20:3-26(b)); Monogram Credit Card Bank of Georgia v. Tennesen, 390 N.J.Super. 123, 126, 134, 914 A.2d 847 (App.Div.2007) (affirming Law Division's award of attorneys' fees under Consumer Fraud Act, N.J.S.A. 56:8-1 to -20). On the other hand, courts have also applied Furst and Rendine outside the context of a fee-shifting statute. See Packard-Bamberger & Co., supra, 167 N.J. at 444-47, 771 A.2d 1194 (affirming Law Division's award of counsel fees as consequential damages for attorney malpractice); Trimarco v. Trimarco, 396 N.J.Super. 207, 217-218, 933 A.2d 621 (App.Div.2007) (awarding counsel fees under Rule 4:42-9(a)(2), which authorizes awarding counsel fees out of a court fund).
As the Court stated in R.M., supra, 190 N.J. at 11-12, 918 A.2d 7, the reasonableness of counsel fees applications under State law is governed by Rules of Professional Conduct 1.5(a)[8] (listing factors in determining reasonableness of counsel fees), and Rule 4:42-9(b) (requiring applications for allowance of fees to address factors listed in RPC 1.5(a)). In this regard, the Furst court stated that RPC 1.5(a) "must inform the calculation of the reasonableness of a fee award in this and every case" and that "a trial court must analyze [these] factors in determining an award of reasonable counsel fees and then must state its reasons on the *1091 record for awarding a particular fee" pursuant to Rule 1:7-4(a), Furst, supra, 182 N.J. at 22, 860 A.2d 435, which requires a trial court to "find the facts and state its conclusions of law thereon in all actions tried without a jury." R. 1:7-4(a). Because contractually-based claims for attorneys' fees are incorporated into Rule 4:42-9, Bergen Rex, supra, 158 N.J. at 570, 730 A.2d 843, it follows that where Rule 4:42-9(b) incorporates RPC 1.5(a) and where Furst requires that a trial court state reasons on the record for an award based on RPC 1.5(a), that such a requirement controls in this case involving a contractually-based claim for attorneys' fees, particularly "[b]ecause [such a requirement] is fundamental to the fairness of the proceedings and serves as a necessary predicate to meaningful review." R.M., supra, 190 N.J. at 12, 918 A.2d 7.
Here, the record is devoid of any analysis of the relevant considerations or any explanation for the $5000 fee award. Interestingly enough, the amount ultimately fixed by the court matches that provided in FBB's proposed revised order. Moreover, no discussion of attorneys' fees at the hearing appears to have informed the court's determination, which was less than one-half of the fees claimed to have been incurred by BOA in this matter. Such reasons, however, are required to satisfy fundamental fairness and to accord meaningful review. Ibid.; Furst, supra, 182 N.J. at 21, 860 A.2d 435. Absent specific findings, we are constrained to remand the matter of counsel fees for reconsideration and a supporting statement of reasons.
Affirmed in part; reversed and remanded in part.
NOTES
[1] These other parcels, owned by Exxon-Mobile and Sun Refining, are not involved in this appeal.
[2] The Order of Final Judgment dismissed the City's verified complaint without prejudice, pending completion of the condemnation hearing, but also provided that the complaint could be restored upon timely appeal of the Commissioner's decision.
[3] Although BOA claims never to have received notice of the City's deposit, it is undisputed that BOA's name and place of business appear on the service list in connection with the City's March 2, 2006 letter to the Trust Funds Unit requesting deposit in accordance with the court's order.
[4] Significantly, in a July 21, 2006 cross-motion, BOA certified that the trial court's denial of withdrawal on April 24, 2006 "was warranted since there are admittedly legitimate environmental concerns at the Premises."
[5] The amount of $746,497.47 reflected $721,717.01 in principal and contract interest up to April 24, 2006, and $24,780.46 in interest at the Trust Funds rate after April 24.
[6] The Eminent Domain Act provides that the date notice of deposit is served is the date title vests with the condemnor, free and clear of any mortgage. N.J.S.A. 20:3-19, -20.
[7] Compare the mortgage provision at issue here, as previously recited, with the provision in Empire Mortgage:

The proceeds of any award ... in connection with any condemnation ... of the Property, ... are hereby assigned and shall be paid to Lender [IMC, as successor to Empire]. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower [Okafor].
[341 N.J.Super. at 225, 775 A.2d 174.]
[8] RPC 1.5(a) provides the following factors:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) whether the fee is fixed or contingent.