**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2826-16T2
                 A-3092-16T2

K.O., Deceased,

      Plaintiff-Appellant,

v.

M.O.,

      Defendant-Respondent.

_____

B.O., D.O., J.O., J.S., D.S., minor,
L.S., minor, and B.S., minor,

      Appellants.

_____

        Argued (A-3092-16) and Submitted (A-2826-16)
        February 7, 2019 – Decided August 23, 2019

        Before Judges O'Connor, Whipple and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FM-09-0911-11.

        Budd Larner, PC, attorneys for appellant K.O. in A-2826-16 (Thomas Darren Baldwin, on the brief).

Robert D. Borteck argued the cause for appellants B.O., D.O., J.S., D.S., L.S., and B.S. in A-3092-16 and respondent B.O. in A-2826-16, joins in the brief of respondent M.O. (Robert D. Borteck, PC, attorneys; Robert D. Borteck and Christine Socha Czapek, on the briefs).

Bonnie M. Reiss argued the cause for respondent M.O. (Paras Apy & Reiss PC, and Connell Foley, LLP, attorneys; Bonnie M. Reiss and Elissa Alexandra Perkins, of counsel and on the brief; Thomas Joseph O'Leary and Daniel B. Kessler, on the brief).

PER CURIAM

In these two appeals, calendared back-to-back and consolidated for purposes of our opinion, K.O. (decedent or father) was the father and defendant M.M. is the mother of S.O. (Sally).[1] Plaintiff, decedent's estate (estate), appeals from the March 31, 2016 Family Part order that, among other things, directed the estate to fund a trust in the amount of $1 million for Sally's benefit, pay $14,151 per month to defendant for Sally's support, and cover other expenses related to Sally's care. The estate also appeals from the July 8, 2016 order denying its motion for reconsideration of the March 31, 2016 order, as well as the February 16, 2017 order compelling it to pay defendant's counsel fees.

---

[1] "Sally" is a fictitious name. We use initials and a fictitious name for the child to protect her and her family's privacy.

Certain members of decedent's family are the residuary beneficiaries of one-half of decedent's estate. These family members appeal from those provisions of the February 16, 2017 order that denied their motion to intervene in the Family Part proceeding and to transfer this matter from the Family Part to the Probate Part.

After reviewing the record, briefs, and applicable legal principles, we affirm in part and remand for further proceedings.

I

The evidence relevant to the issues on appeal is as follows. Decedent and defendant were married in May 2008. Sally was born during the marriage and is presently nine years of age. In June 2012, decedent and defendant were divorced by dual judgment of divorce, which incorporated two agreements into which they had entered, the Custody and Parenting Time Agreement (CPTA) and the Support and Property Settlement Agreement (SPSA). The CPTA provided the parties were to share joint physical custody of Sally. In particular, the parties agreed Sally was to be in decedent's care for forty-seven and in defendant's care for fifty-three percent of the time.

The SPSA states decedent must pay defendant child support in the amount of $7500 per month. It is not disputed the parties deviated from the Child

Support Guidelines when they agreed decedent was to pay the latter sum to defendant in child support. The SPSA also provided decedent was to pay for other expenses incurred by or on behalf of the child. The SPSA noted child support may be "modified in the event of changed circumstances as permitted by law."

Although the SPSA provided child support was to terminate upon the child's death or upon the occurrence of other events, the agreement did not state child support was to terminate upon the death of a parent. Article 1.5 of the SPSA required the father to secure his obligation to pay child support as follows:

> [Father] shall have the prerogative of either maintaining a policy(ies) of life insurance, to be owned by [defendant], with a death benefit of, or pledging assets totaling, not less than $1,000,000.00, and [defendant] shall maintain a policy(ies) of life insurance, to be owned by [father], with a death benefit of not less than $250,000.00. Each party shall be designated the trustee of the other's obligation on behalf of the [c]hild, who shall be designated the beneficiary.

In June 2014, the father died unexpectedly. He was thirty-six years of age. By the time of his death, decedent had not fulfilled his obligations under Article 1.5 of the SPSA by either obtaining a life insurance policy providing coverage for or pledging assets worth $1 million.

A-2826-16T2

It is not disputed that, even though Sally was with decedent forty-seven percent of the time, he paid defendant $7500 per month in child support to help defendant provide a lifestyle for Sally commensurate with what the child enjoyed when with the father. In his Last Will and Testament (will), decedent bequeathed $5 million to Sally, to be held in trust for her benefit. The will also provided that one-half of his residuary estate is to be held in trust for Sally and, in addition to the two latter provisions, Sally is the sole beneficiary of an irrevocable insurance trust agreement worth $2 million. The other half of decedent's residuary estate is to be held in trust for certain family members, who are specified by name in the will.

After the father's death, the mother discovered decedent had not complied with his obligations under Article 1.5 of the SPSA. The executor of the estate also did not provide defendant with any child support for Sally's benefit. Therefore, the mother filed a motion seeking relief against the estate and on August 13, 2015, the court entered an order compelling the estate to pay defendant $7500 per month for child support, as well as the other expenses to which the father had agreed in the SPSA.

In her motion, defendant also had sought to have the estate held liable for the father's failure to abide by Article 1.5 of the SPSA, by obtaining an order

directing the estate to establish a $1 million trust. The estate maintained it did not have an obligation to establish and fund such a trust and, even if it did, the trust had to be funded from the money in the $5 million trust. The court agreed with defendant, and directed the estate to "craft a $1 million payment to be managed at the defendant's discretion in a trust for [Sally,] which the defendant will be granted trustee of." We refer to the trust the court ordered be created as the "Article 1.5 trust."

The order also provided that defendant was to prepare the documents necessary to establish the trust. Defendant promptly drafted and, in September 2015, submitted to the estate the appropriate documents necessary to establish a trust that complied with Article 1.5 of the SPSA. However, the estate did not fund the trust and, in early 2016, defendant filed a motion to enforce the August 13, 2015 order (the first motion). In addition to seeking other relief not pertinent to the issues on appeal, defendant sought child support in the amount of $17,362 per month, and counsel fees.

To protect the residuary estate, the estate filed a cross-motion seeking a judgment declaring the Article 1.5 trust be funded by the money in the $5 million trust, the estate get a credit for any support payments it had provided to defendant for Sally's support, and only the funds in the Article 1.5 trust be used

for Sally's support. The estate also challenged defendant's request for an increase in child support, claiming the amount defendant sought was not supported by the evidence.

The estate defended its failure to fund the Article 1.5 trust by arguing the court had not inserted a deadline in the August 13, 2015 order stating by when the trust had to be funded. The estate also maintained certain issues had to be resolved before the trust could be funded, such as whether defendant had an obligation to notify the estate whenever she wanted to withdraw funds from the trust, whether she was required to provide an annual accounting of the funds she withdrew, and if the estate could keep any money that was left in the fund after Sally's emancipation.

On March 31, 2016, the court entered an order that granted defendant the principal relief she sought in her motion, and denied the estate's cross-motion. The court found the estate in violation of litigant's rights for failing to fully fund the Article 1.5 trust, ordered the estate to fund the trust by a date certain, and directed the estate to use funds "off the top" of the residuary portion of the estate to fund the trust.

The court increased Sally's monthly child support to $14,151 and ordered the estate to continue to pay for those expenses to which the father had agreed

in the SPSA. The court directed that Sally's child support be paid out of the Article 1.5 trust and, when such trust was depleted, the estate was to continue making payments for Sally's support in accordance with the order. Finally, the court ordered the estate to pay counsel fees of $77,677.41 to defendant.

In its order, the court explained it increased Sally's child support because of the change in circumstances occasioned by defendant becoming Sally's full time legal and physical custodian. In its oral opinion, the court noted that $14,151 per month in child support, plus the other expenses the father agreed to pay, is what the father and defendant agreed was necessary to support Sally. The court noted it had merely:

> amend[ed] the percentage of time that [defendant] spends with the child.
>
> . . . .
>
> $7500 a month was what [decedent] agreed in his property settlement agreement to pay for the 53 percent of the time that the child was with her mother. So, if I take 7,500 and I divide it by 53, 1 percent is $141.50. If I multiply that by a 100 percent because that's the amount of time she now has the child, that's $14,151. That's what these folks agreed was the necessary amount . . . [for the child] to have all of the things that her dad thought she should have at her mother's house due to the disparity of their incomes.

A-2826-16T2

The court recognized the Article 1.5 trust will be depleted by the time the child reached age twelve, yet Sally will need child support until her emancipation. However, the court declined to decide from what source child support will be paid once the funds in the Article 1.5 trust were exhausted. The court observed that when Article 1.5 trust funds were completely drained, the estate could file an application in the Probate Part and argue the child's assets exceeded what the residuary estate possessed, and thus the estate should be permitted to tap into the $5 million trust or the insurance trust for Sally's support. Finally, the court explained it ordered the estate to pay counsel fees because the estate had defied a previous court order to fund the Article 1.5 trust, and defendant's request for an increase in child support was reasonable.

The estate filed a motion for reconsideration of the March 31, 2016 order (the second motion). Defendant filed a cross-motion to enforce such order and to request counsel fees. Before the motion for reconsideration was heard, those family members who received an interest in one-half the residuary estate (proposed intervenors) filed a motion to intervene in the Family Part action. They also sought to transfer the matter to the Probate Part for a hearing to determine whether the provisions of the March 31, 2016 order requiring that the

Article 1.5 trust be funded from the residuary estate was consistent with decedent's testamentary intent.

On July 8, 2016, the court entered an order denying the motion for reconsideration, finding the estate failed to meet the standards in Rule 4:49-2 to warrant granting the motion. However, the court permitted the estate to submit additional pleadings pertaining to and reserved its decision on the issue of counsel fees. The court also reserved on the motion to intervene.

On February 16, 2017, the court entered an order denying the estate's motion to reconsider that provision of the March 31, 2016 order that awarded defendant counsel fees of $77,677.41, denied the proposed intervenors' motion to intervene and to transfer the matter to the Probate Part, and granted defendant's request for the $61,155 in counsel fees she incurred in connection with the second motion. In an oral opinion issued on January 30, 2017, the court provided the reasons for those rulings that were subsequently included in the February 16, 2017 order.

The court denied the proposed intervernors' motion for permissive intervention on the ground it was untimely. We note here that Rule 4:33-2 requires that an application for permissive intervention be timely. The court's principal reason for denying the motion to intervene as of right, see Rule 4:33-

1, also was that it was untimely. See B.C. v. N.J. Div. of Child Prot. & Permanency, 450 N.J. Super. 197, 208 (App. Div. 2017) (holding that to satisfy Rule 4:33-1, a party must show, in addition to three other factors, that the application to intervene was timely). Specifically, the court found that, for approximately one year, the proposed intervenors were aware defendant sought rulings from the court that would have the effect of reducing the size of the residuary estate, yet they did not seek to intervene until long after the court made rulings adverse to their interests, such as those contained in the August 13, 2015 order.

In addition, the court found the proposed intervenors' interests were adequately represented by the estate. We note here that, as observed in B.C., one of the factors a party must show to intervene as of right is that such party's interests are not being adequately represented by an existing party. Ibid.

Specifically, the court found the estate had taken multiple actions to further the interests of the beneficiaries of the residuary estate, including those of particular concern to the proposed intervenors. For example, the estate resisted creating the Article 1.5 trust and, when that effort failed, the estate sought to fund the latter trust with funds from the $5 million trust, filed a motion to reconsider and vacate the March 31, 2016 order, and sought a judgment

11

declaring the Article 1.5 trust was the extent of the estate's liability. The court also addressed the issue of fees in its oral opinion, which we discuss below.

After the parties filed their briefs in this appeal, defendant, the estate, and the trustee of the $8 million trust settled certain issues. The key provisions of their settlement are: (1) the funding of the Article 1.5 trust is deemed an obligation of the estate and shall be funded from the residuary portion of the estate; and (2) defendant shall receive a total of $11,000 per month from the Article 1.5 trust for Sally's support, and when that trust is exhausted, the trustee of the $8 million trust shall exercise his discretion to provide funds from such trust to pay for Sally's expenses.

## II

In light of the aforementioned settlement, the arguments the estate asserts on appeal are moot, with one exception. The estate's one remaining argument is that the court abused its discretion by awarding defendant counsel fees in the amount of $138,832.41. The proposed intervenors' principal contention on appeal is that the trial court erred when it denied their motion to intervene.

We first address the estate's contention that the amount of counsel fees awarded to defendant was excessive. The reasonableness of a counsel fee application is governed by RPC 1.5(a) and Rule 4:42-9(b). City of Englewood

v. Exxon Mobile Corp., 406 N.J. Super. 110, 124-25 (App. Div. 2009). RPC 1.5(a) identifies seven factors a court is required to consider in assessing the reasonableness of attorney's fees. Ibid. Before awarding fees, a "court must analyze [the seven] factors . . . and then must state its reasons on the record for awarding a particular fee . . . ." Id. at 125 (quoting Furst v. Einstein Moomjy, 182 N.J. 1, 22 (2004)). A court's statement of its reasons addressing each factor "is fundamental to the fairness of the proceedings and serves as a necessary predicate to meaningful review." Ibid. (quoting R.M. v. Supreme Court, 190 N.J. 1, 12 (2007)).

Here, the only RPC 1.5(a) factor challenged is the first one, which states:

> (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>
> > (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
>
> [RPC 1.5(a)(1).]

The estate claims the size of the counsel fee award is not justified by the record. As noted, the court ordered the estate to pay defendant $77,677.41 for the counsel fees defendant incurred in connection with the first motion, and to pay $61,155 for the fees she incurred in connection with the second motion. It

is not disputed the court failed to give reasons for awarding defendant the $77,677.41 in fees, but the court provided reasons for ordering such fees when it addressed defendant's request for the fees she incurred in connection with the second motion.[2]

We have no quarrel with the court's decision to award defendant the fees she incurred in connection with both motions, or with the hourly rate the attorneys in defendant's counsel's firm charged.[3] However, with respect to the amount of fees, the trial court did not make clear why defendant's attorneys were justified in spending the number of hours that they did on these motions.

For example, part of the relief defendant sought in her first motion was to enforce a previous order pursuant to Rule 1:10-3. The estate had been ordered to take certain actions and it failed to do so. The time and effort necessary to draft a motion to enforce litigant's rights and compose an argument in support of such relief should not have been a complicated or time-consuming task. We understand the estate protested taking the action it had been previously ordered

---

[2] The judge who decided the first motion retired shortly after the entry of the March 31, 2016 order. The judge who decided the second motion reviewed the record of the first motion and determined the basis for the award of $77,677.41 in fees.

[3] More than one attorney in the law firm defendant retained worked on the subject motions.

to do, but the estate's reasons for resisting abiding by the court's prior order were feeble and could be easily overcome with elementary advocacy.

Defendant also sought an increase in child support due to the change in circumstances caused by the father's death. However, family law practitioners routinely handle applications pertaining to a change in circumstances. To be sure, some applications are more complex than others, but we question whether, given the issues involved, defendant's attorneys needed to devote so much time to researching and drafting the certification and brief submitted on this issue.

As for the second motion, although defendant was required to respond to the estate's motion for reconsideration, none of the arguments the estate asserted appear to have been complex, not to mention likely to surmount the standard required by Rule 4:49-2 to secure reconsideration. Defendant also filed a cross-motion seeking to enforce provisions in the March 31, 2016 order. The issues asserted in the cross-motion were straightforward, as defendant was merely seeking an order to compel the estate to comply with the latter order. Defendant also sought some additional relief, but none of the relief sought appears to have required the drafting of a complicated or elaborate certification and brief.

Therefore, in our view, the trial court did not sufficiently address RPC 1.5(a)(1). Without more input from the trial court, we cannot ascertain from its

opinion whether it appropriately scrutinized the billing sheets and thoroughly analyzed whether the number of hours defendant's attorneys spent on the issues raised in the first and second motions were reasonable and necessary. We recognize the trial court may well have had sound reasons for finding defendants' attorneys were justified in billing the number of hours that they did. If that is so, we just do not know what those reasons are.

Accordingly, we are constrained to remand this matter to the trial court so that it can amplify its reasons and specifically articulate why defendant's attorneys were justified in billing the number of hours indicated on their billing sheets for the work performed on the subject motions. Of course, the trial court is not precluded from seeking additional evidence or argument from the parties, if in its discretion it chooses to do so.

We have considered the proposed intervenors' contentions on appeal and determine their arguments are without sufficient merit to warrant discussion in a written opinion, see Rule 2:11-3(e)(1)(E), not to mention some of their arguments have been rendered moot by the settlement entered into among defendant, the estate, and the trustee of the $8 million trust.

Affirmed in part and remanded in part for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2826-16T2