**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0944-18T2

JACQUELINE CONNELL,

     Plaintiff-Appellant,

and

JOSEPH CONNELL,

     Plaintiff-Respondent,

v.

NATIONAL RETAIL
SYSTEMS, INC.,

     Defendant-Respondent.

_____

Argued telephonically February 13, 2020 –
Decided June 4, 2020

Before Judges Rothstadt and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law
Division, Hudson County, Docket No. L-0940-16.

Scott B. Piekarsky argued the cause for appellant
(Piekarsky & Associates, LLC, attorneys; Scott B.

Piekarsky, of counsel and on the briefs; Jennifer O'Neill, on the briefs).

Michael O'Brien Boldt argued the cause for respondent National Retail Systems, Inc. (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Kevin B. Walker, of counsel and on the brief; Anastasia Stylianou, on the brief).

Joseph Connell, respondent pro se, joins in the brief of appellant Jacqueline Connell.

PER CURIAM

Plaintiff Jacqueline Connell appeals from two orders entered by the Law Division on April 27, 2018 granting defendant National Retail Systems, Inc. (NRS) summary judgment on its counterclaim for breach of contract, denying her cross-motion for summary judgment, and dismissing her complaint. She also challenges an August 17, 2018 order fixing the amount of attorney's fees awarded to NRS in an earlier order, and a September 28, 2018 order denying her motion for reconsideration.

The parties' dispute focused upon an agreement between plaintiff, her husband, plaintiff Joseph Connell, and NRS, a company owned and operated by plaintiff's family members.[1] The agreement required Joseph to refrain from

---

[1] Joseph Connell did not file an appeal but notified this court that he "adopt[ed] all pleadings filed by" plaintiff and her attorneys. We refer to Joseph and other

specified conduct. The motion judge granted NRS summary judgment on its counterclaim after he determined it was undisputed that the agreement was valid, Joseph breached the agreement, and there was no genuine issue as to a material fact about NRS being entitled to the enforcement of the agreement.

On appeal, plaintiff argues that the agreement was void as to Joseph since the agreement lacked consideration and its non-compete/non-disclosure provisions were invalid, and because the agreement was void as to Joseph, summary judgment was wrongfully granted as there was no evidence supporting plaintiff's breach of the agreement. She also contends that the judge wrongfully denied her cross-motion for summary judgment, the judge erred by granting defendant attorney's fees, and the judge incorrectly denied her motion for reconsideration.

We affirm the motion judge's determination that Joseph breached the agreement, substantially for the reasons expressed by the motion judge in his May 8, 2018 written decision. However, we are constrained to remand for findings as to the judge's award of counsel fees because the judge did not provide any statement of reasons for the award.

---

individuals in this matter by their first names for clarity and to avoid any confusion arising from the common surnames in this intrafamily dispute.

A-0944-18T2

The material facts are generally undisputed. NRS, a closely held family corporation, was formed in 1952 as a logistics company that provided freight transportation to its customers. NRS was founded and has been operated by members of plaintiff's family, the Walsh family, since its inception. From 2000 until 2009, when he passed away, plaintiff's father Francis "Frank" Walsh II (Frank) was the majority shareholder and operated the company. Since 2016, all of the company's outstanding shares have been held in a family trust established in 2012. Plaintiff's brother, Francis Walsh III, is the sole beneficiary of the trust, and since 2016 is its chief executive officer.

After plaintiff married Joseph in 1987, he was hired by NRS as a dispatcher and driver in January 1992. In 1997, Joseph became a terminal manager and remained in that position until October 31, 2007, when he was terminated for cause relating to his public disclosure of personal confidential information about Frank and Francis, and financial information about NRS.

The events leading to Joseph's termination centered on his volatile relationship with Francis that was marked by "long-standing differences between them." The relationship was so bad that while Frank was alive, he required that the two not interact with each other. After Francis allegedly breached that directive, a heated meeting was held at which Frank and Joseph

almost engaged in a physical altercation. At the meeting, Frank informed Joseph that he did not care that his son violated the directive. Joseph then made allegations about Francis's sexual relations, orientation, and activities. Frank informed Joseph that he could not have this disruption with his company and asked Joseph what it would take for him to leave.

The meeting led to NRS's Board of Directors (BOD) and shareholders threatening to take action against Joseph, and he proposing on October 21, 2007, that he leave the company with a severance package, without obligating him to perform any services for the company, under the following terms,:

> Joseph . . . agrees to never disclose any financial or personal information pertaining to [NRS], its [BOD,] or Shareholders. Joseph . . . also agrees to reimburse [NRS] if he violates this agreement including attorney['s] fees. The reimbursement amount would include any pay or compensation obtained after the start of the signed agreement date.
>
> [NRS, BOD,] and Shareholders agree[] to continue Joseph['s] . . . current rate of pay and medical insurance until the age of 67 (his expected retirement age). In the event the company is sold, [NRS, BOD,] and Shareholders agree to pay the balance of the agreement or transfer agreement to the new owners. [NRS, BOD,] and Shareholders also agree to reimburse Joseph . . . any attorney['s] fees paid to comply with agreement.

Two days later, Joseph sent an email to an NRS attorney, in which he asked the attorney to distribute to the BOD and shareholders a letter that

A-0944-18T2

disclosed Frank's criminal convictions and how Frank encouraged Joseph to take advantage of NRS customers and provide them with false information. It also alleged illegal activities Frank participated in and how Frank was abusive towards his family. Joseph ended the letter by stating he needed to report Frank to the police for his family's safety.

On October 31, 2007, NRS terminated Joseph. After his termination, plaintiff was placed on NRS's payroll, although she was not required to perform any services, she was not given a specific title and was not paid any compensation in 2007.

Additionally, after Joseph's termination, the parties entered discussions about a "[s]everance [a]greement," along the lines of his earlier proposal that provided Joseph with severance and NRS with assurances that he would no longer disseminate confidential information. During the discussions, Joseph asked if plaintiff could be included in the agreement as he worried her family, especially Frank, would retaliate against her by terminating her employment.

On January 22, 2008, the final agreement was signed by NRS, plaintiff, and Joseph. It stated:

> Joseph and [plaintiff] . . . agree to never disclose or share [NRS], [BOD,] or Shareholders financial or personal information. Joseph . . . agrees not to work for any competitors or customers unless written

A-0944-18T2

authorization is obtained from [NRS]. <u>In the event that Joseph or [plaintiff] . . . violates this agreement</u>, they agree to reimburse [NRS], for any pay or benefits received after the signing of this agreement including any attorney['s] expenses.

[NRS], [BOD,] and Shareholders agree[] to continue paying [plaintiff's] current rate of pay ($104,000 per annum) and family medical insurance until their 67th birthday. In the event the company is sold or dissolved, [NRS], [BOD,] and Shareholders may elect to continue making payments as scheduled or pay off the remaining balance of this agreement. [NRS], [BOD,] and Shareholders agree to reimburse any attorney['s] fees to enforce agreement.

[(Emphasis added).]

Until 2015, the parties followed the agreement. During the years following the agreement's execution, plaintiff performed services without a set work schedule, helping with advertising, marketing, and organizing company events.[2] She also attended conventions across the country to interact with the company's customers. Plaintiff was "paid . . . the equivalent of" Joseph's former salary and NRS considered her an asset who "did whatever she needed to do and [went] above and beyond."

---

[2]  According to plaintiff, she began working at NRS after January 22, 2008, although she later modified her start date to October 2007.

A-0944-18T2

Inexplicably, beginning in April 2015, Joseph began to send other information in contravention of the agreement. On April 24, 2015, Joseph emailed Francis's father-in-law and stated that Francis's wife contracted a sexually transmitted disease from Francis and informed the father-in-law of Francis's sexual orientation. On another occasion, Joseph disclosed NRS's financial information to a former NRS employee and a union driver. On August 17, 2015, Joseph emailed government officials confidential information pertaining to NRS's revenue. Joseph also reported to the FBI that NRS had and was continuing to conduct illegal activity that was negatively impacting NRS's employees. On August 20, 2015, he sent an email to the local union, sharing NRS's financial information.

The following day, Joseph received a cease and desist letter from NRS. Joseph then emailed several NRS employees and government officers that he would "continue to help the Union Members of Local 1964." Additionally, on August 22, 2015, Joseph sent an email to a third party, disclosing further information about NRS's past activities and financial information.

In response to Joseph's actions, NRS's BOD decided to take "action to end the salary [that was being] paid to" plaintiff. On August 31, 2015, NRS

informed plaintiff that she was being terminated due to the company downsizing.

Plaintiff and Joseph filed a complaint on March 1, 2016, alleging breach of contract and violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 (CEPA).[3] The complaint alleged, among other things, that the agreement was a valid contract supported by "valuable consideration," and by terminating payment to "plaintiffs" on August 31, 2015, NRS "breached the contract." NRS filed an answer and asserted counterclaims for breach of contract and unjust enrichment. In its pleading, NRS also alleged that the agreement was "a valid and enforceable contract." In response, plaintiff filed an answer to the counterclaim asserting an affirmative defense that "[t]he terms of the contract relating to Joseph . . . are unenforceable as [he] received no consideration in the form of compensation or otherwise . . . . "

After the parties engaged in discovery and filed numerous motions, including plaintiff's first summary judgment motion that was denied, NRS filed a motion for summary judgment on March 16, 2018 as to its counterclaim. In support of its motion, NRS filed a statement of material facts and an affidavit

---

[3] The CEPA claim was later dismissed with prejudice in response to NRS's Rule 4:6-2 motion. The order dismissing that claim is not under appeal.

from its human resource director stating that plaintiff was placed on NRS's payroll in November 2007 and received income from NRS from 2008 through 2015.

Plaintiff opposed NRS's motion and filed a cross-motion for summary judgment. With her motion, plaintiff filed a response to NRS's statement of material facts and a certification provided from her as well as one from Joseph. In both certifications, plaintiff and Joseph gave their statement of material facts, that plaintiff was an employee of NRS with specific responsibilities, NRS fired plaintiff in retaliation for Joseph's actions, and that NRS was involved in illegal and fraudulent activities, which Joseph properly disclosed.

In opposing NRS's motion and in support of her own motion, plaintiff argued: (1) There was a valid contract between the parties that NRS breached by suspending payments to plaintiff; (2) NRS did not argue that plaintiff, as compared to Joseph, breached the agreement or that plaintiff was terminated for any other reason; (3) Joseph did not violate the agreement by disclosing Francis's sexual activities because that information did not constitute confidential information under the agreement; (4) NRS's argument that Joseph's communications with government personnel about NRS's alleged illegal activity breached the agreement was against public policy; (5) plaintiff was entitled to

10

an adverse inference against NRS for failing to provide pertinent documents; (6) in the alternative, summary judgment should be denied as there were material factual issues in dispute; (7) plaintiff and Joseph did not breach the agreement as the agreement only prohibited Joseph from competing with NRS and disclosing information to NRS's competitors;[4] (8) the liquidated damages provision of the agreement was unenforceable; and (9) NRS's unjust enrichment claim must be denied as plaintiff and Joseph did not willfully violate the agreement.

After considering the parties' oral arguments, on April 27, 2018, the motion judge entered an order granting NRS's motion for summary judgment as to its breach of contract claim but denying its claims of unjust enrichment and for attorney's fees. In that same order the judge dismissed plaintiff's complaint with prejudice. The judge entered another order that day denying plaintiff's motion for summary judgment. On May 8, 2018, the judge issued a written decision setting forth his reasons.

---

[4] In this argument, plaintiff claimed that the agreement was ambiguous as to "what financial or personal information [was] meant" in the agreement but stated that Joseph explained what the clauses meant in his certification. In Joseph's certification, he stated that he was only prohibited from disclosing "information about rates and customers for [his] own benefit or competitors as [NRS] wanted to keep [him] from working for competitors and using [his] knowledge of NRS to benefit [him]self or to compete against NRS's competitors."

A-0944-18T2

In his written decision, the judge stated, "the relevant provisions of the agreement at issue here [were] clear and unambiguous." The judge noted that he did not consider the validity of the non-compete or non-disclosure provisions as it was not contested, and plaintiff argued it was not applicable to this matter. As to defendant's claim that Joseph breached the agreement, the judge found that he clearly violated the agreement by disclosing personal information about Francis, i.e. his sexual endeavors, and financial information about NRS to "union members and third parties."

As to defendant's unjust enrichment claim, the judge noted that the damage provision in the agreement was "clearly a liquidated damages provision" as there was no "fixed damage amount." The judge found that on its face, the liquidated damages provision was an "unenforceable penalty" because if plaintiff and Joseph breached the agreement when plaintiff turned sixty-seven years old, they would have been responsible for $2.5 million. Therefore, the judge denied summary judgment as to defendant's unjust enrichment claim.

The judge did not make findings about attorney's fees or plaintiff's cross-motion for summary judgment. As to the latter, the judge only noted that "[p]laintiffs' cross-motion for summary judgment [was] denied in full."

NRS filed a motion for reconsideration as to the denial of attorney's fees. In opposition, plaintiff argued that contrary to NRS's contention, the judge denied fees as part of his rejection of NRS's unjust enrichment claim. Plaintiff also contended that an award of fees was unenforceable as liquidated damages. On June 8, 2018, the judge granted the motion and stated that an award of attorney's fees stemming from defendant's breach of contract claim was warranted.[5] In the order, the judge noted that "[t]he agreement clearly provide[d] for attorney['s] fees in the event of breach of the agreement."

Thereafter, NRS's attorney filed a certification of services, seeking $489,102.48 in fees and costs. After retaining new counsel, plaintiff filed her opposition to NRS's application, arguing for the first time that "<u>attorney's expenses</u>" under the clear and unambiguous language of agreement did not include attorney's fees. (Emphasis added). On August 17, 2018, the judge awarded $371,977.48 in attorney's fees and costs. No findings were attached to the order or placed on the record.

Plaintiff filed a motion to reconsider the June 8, 2018 and August 17, 2018 orders awarding attorney's fees. In her motion, plaintiff argued that portions of the agreement were unenforceable, and in the alternative, if there was a breach

---

[5] Plaintiff has not appealed from this order.

of the contract, NRS was only entitled to attorney's expenses.  On September 28, 2018, the judge denied this motion for reconsideration.  The judge noted that he could not consider plaintiff's arguments that were raised for the first time on reconsideration, and he did not apply incorrect reasoning in granting summary judgment or in granting attorney's fees to NRS.  This appeal followed.

At the outset, we conclude that the issues raised by plaintiff on appeal relating to the validity of the agreement and her challenge to NRS's entitlement to attorney's fees, are procedurally barred from our consideration.  The issues were not properly raised before the motion judge on summary judgment or were improperly raised for the first time on reconsideration or on appeal.[6]  We "will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest."  Nieder v. Royal Indem. Ins., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).  Neither of these exceptions apply to plaintiff's arguments.

---

[6]  In her reply brief to us, plaintiff confirms that she only raised these issues in her "Answer to [NRS'] Counterclaim, in discovery[], and again in [her] [m]otion for [r]econsideration."

Raising an argument for the first time on reconsideration does not constitute a proper presentation of an issue. A party is not permitted to use a motion for reconsideration as a basis for presenting new facts or arguments that could have been provided in opposition to the original motion. Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996). Plaintiff never explained why the issues were not raised in opposition to summary judgment.

Moreover, the position taken by plaintiff on reconsideration and now on appeal contradicts her position on summary judgment where she contended the agreement was binding and valid, and she never asserted that the language of the agreement barred an award of attorney's fees. Under these circumstances, she is judicially estopped from relying on her new view of the agreement.

While "judicial estoppel most often arises when a party takes inconsistent positions in different litigation, . . . it can be equally applicable where a litigant asserts inconsistent legal positions in different proceedings in the same litigation." Id. at 385. "[A] position has been 'successfully asserted' if it has helped form the basis of a judicial determination." Id. at 387-88 ("The judicial determination does not have to be in favor of the party making the assertion. If a court has based a final decision, even in part, on a party's assertion, that same party is thereafter precluded from asserting a contradictory position.").

A-0944-18T2

Plaintiff's remaining argument relates to the motion judge's finding that Joseph breached the agreement. According to plaintiff, whatever Joseph did was not a violation of the agreement or could not be attributed to her. Applying our de novo standard of review, see R. 4:46-2(c); see also Lee v. Brown, 232 N.J. 114, 126 (2018), we conclude that plaintiff's contention in this regard is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons expressed by the motion judge.

Turning to the motion judge's award of attorney's fees, we reach a different conclusion. As to that award, we are constrained to vacate the award and remand the matter back to the judge for a statement of reasons that explains how the fees and expenses were awarded under our well-settled guiding principles. See R. 4:42-9; Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386-87 (2009); Rendine v. Pantzer, 141 N.J. 292, 316-20 (1995). Those principles include a requirement that once a court makes a determination as to the reasonableness and amount of an applicant's fees and costs, it must set forth its findings in an oral or written decision as required under Rule 1:7-4(a) to allow for meaningful appellate review. See City of Englewood v. Exxon Mobile Corp., 406 N.J. Super. 110, 123-26 (App. Div. 2009); S.N. Golden Estates, Inc. v. Cont'l Cas. Co., 317 N.J. Super. 82, 91 (App. Div. 1998).

Affirmed in part; vacated and remanded in part for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17